IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
JUN 17 2005
J.T. NOBLIN, CLERK
By _____ Deputy

CHRISTINA D. JORDAN                                                          PLAINTIFF

VERSUS                                                  CIVIL ACTION NO. 1:04cv24WJG-JMR

ISLE OF CAPRI CASINOS, INC.; and
SCHINDLER ELEVATOR CORPORATION                                               DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the Court on motion of the Defendant, Schindler Elevator Corporation [Schindler] for summary judgment [39-1] pursuant to Rule 56 of the Federal Rules of Civil Procedure. Also pending before the Court is the Plaintiff's motion in opposition [42-1] to the summary judgment motion. The Court has duly considered the record in this action, and the briefs of counsel, and being fully advised in the premises, concludes as follows.

Christina Jordan, Plaintiff in this action, claims that she was injured on the down escalator at the Isle of Capri Casino [Isle] in Biloxi, Mississippi on January 14, 2001. (Compl., p. 2.) Jordan claims that her work boot became trapped in the teeth of the escalator step causing her to fall forward and to allegedly suffer serious injury. (*Id.*) As a result, Jordan filed suit, contending that the Defendant "carelessly and negligently" permitted the escalator to be and remain in an "unstable and dangerous condition for use." (*Id.*, p. 3.) Jordan maintains that Schindler allegedly failed to "design, manufacture and/or install" the escalator in a safe condition. (*Id.*, p. 4.) The Plaintiff also asserts that Schindler failed to warn of the allegedly unsafe condition of the escalator. (*Id.*)

According to Schindler, Jordan has no evidence that any negligent act by Schindler caused or contributed to the alleged incident underlying this lawsuit. (Ct. R., Doc. 41, p. 3.) She cannot prove that Schindler negligently maintained the escalator or failed to make periodic inspections of the escalator. (*Id.*, p. 9.) Schindler maintains there is no evidence presented by the Plaintiff that the elevator was defective in design or manufacture; that Schindler failed to comply with the terms of the maintenance agreement between Schindler and the Isle; or of any hazards associated with the escalator about which Schindler should have posted warnings. (*Id.*) According to Schindler, the penetration of the comb segments into the steps and the distance between the step treads are within industry standard specifications. (*Id.*, p. 8.)

Schindler contends that the Plaintiff's expert Albert McEachern, a mechanical engineer, has not testified as an expert on escalators or as a mechanical engineer regarding escalators, and has no opinion regarding defects in the design or manufacture of the escalator. (*Id.*, p. 4; Exh. 1, p. 18.) The Defendant asserts that McEachern has not designed or performed maintenance or any work on an escalator, has not published any articles on escalators, and is not on an escalator committee of an engineering society. (*Id.*, Exh. 1, pp. 21-2, 25.)

According to information gained at McEachern's deposition, he did not inspect the elevator until December 2004, although the incident at issue in this lawsuit happened in January 2001. (*Id.*, p. 74.) His understanding of the incident comes from conversations with Plaintiff's counsel, and he testified that he did not meet Jordan or read her deposition. (*Id.*, p. 29.) According to the Defendant, McEachern has not reviewed any literature on escalators aside from a book he brought to his deposition. (*Id.*, p. 24.) The Defendant maintains that McEachern's

2

opinion lacks the proper foundation to qualify as an expert opinion regarding the incident which allegedly caused Jordan's injuries. (Mot. for Summ. J., p. 5.)

McEachern opined that the escalator was not properly maintained, basing his opinion on his observations of a missing tooth on the combplate on October 26, 2004, and a worn step tread on the escalator in December 2004; and because he had not seen any of Schindler's maintenance records showing when maintenance was performed on the subject escalator. (*Id.*, Exh. 1, pp. 74, 76.) Schindler asserts that routine maintenance was performed on the equipment at the Isle as shown in the maintenance records from July 25, 2000, to July 13, 2001. (*Id.*, Exh. 2.) Visual examination and preventative maintenance was performed on the equipment 75 times during that time period and 60% of that maintenance was done on escalators. (*Id.*, Exhs. 2-3.)

Schindler contends that just because there was a missing combplate tooth on the escalator in October 2004 does not mean that it was missing on the date of Plaintiff's alleged injury. The maintenance records from the time period surrounding the accident do not reference missing teeth on the combplate at the bottom of the down escalator between the mezzanine and the casino, where the incident at issue here allegedly took place. (*Id.*, Exhs. 2-3.) Duane Whittle, Schindler's route mechanic for the Isle, replaced only one escalator combplate at that location during the past five years, and that was in 2004. (*Id.*, Exh. 3.) That combplate was not missing on May 28, 2004, and according to Schindler cannot be used to establish improper maintenance on the escalators at the time of Jordan's accident as alluded to in McEachern's report. (*Id.*, Exhs. 4-5.) Whittle has been an elevator/escalator mechanic since 1977. (*Id.*, Exh. 3, p. 1.) He averred that the down escalator between the mezzanine and the casino was installed in August 1995, and that he is familiar with that escalator. (*Id.*) He further averred that the maintenance records from

3

July 25, 2000, to July 13, 2001, do not reference any call back for service of the down escalator between the mezzanine and the casino during the relevant time period of Jordan's accident, and do not show any missing teeth from the combplate or clearance problems at the bottom of that escalator during that time period. (*Id.*, p. 2.) He also stated that the penetration of the comb segments into the steps and the distance between the step treads are within ASME[1] A17.1 specifications. (*Id.*)

James Meyer, an attorney at the Aubert Law Firm representing Schindler in this matter took a photograph of the subject escalator at the Isle on May 28, 2004, and avers that the photograph demonstrates that it was not missing a tooth on that date. (*Id.*, Exh. 4 and its Exh. A.) Schindler asserts the photograph showing an undamaged combplate on the subject elevator logically refutes the Plaintiff's assertion that the combplate was damaged at the time of Jordan's injury on January 14, 2001. (*Id.*) Schindler argues that there is no evidence offered that the combplate was damaged on the date of Jordan's injury, and that the maintenance records do not indicate a damaged combplate during that time period. (*Id.*)

Dale C. Burrell, the field superintendent for Schindler, submitted an affidavit in which he provides that he has been a licensed elevator/escalator technician since 1985. (Id., Exh. 6, p. 1.) Burrell avers that Schindler performed proper maintenance on the escalator as provided in the preventative maintenance contract. (*Id.*, p. 2.) Burrell further avers that the Isle did not report Jordan's incident on January 14, 2001, to Schindler or any problems concerning the subject escalator on the day of the incident at issue in this lawsuit. (*Id.*) Schindler had no reports of

---

[1] ASME is the American Society of Mechanical Engineers, which sets the standards for the escalator industry.

4

anyone other than Jordan, having their shoe trapped in the escalator teeth at the Isle, and first learned of Jordan's incident when it was sued. (*Id.*, p. 3.)

The service agreement provided that Schindler would "[p]eriodically examine, and as needed, repair or replace step treads, combplate finger sections, handrails and handrails guides" among other maintenance provisions allowed for escalators under the agreement. (*Id.*, Exh. 6 and its Exh. A, p. 4.)

Anne Mosher, risk manager at the Isle at the time of the incident at issue in this suit, averred that she is familiar with the subject escalator and had no knowledge of any reported problems with the escalator at the time of the incident on January 14, 2001. (*Id.*, Exh. 7, p. 2.) No one at the Isle reported any problems with the escalator on that day, and no one other than Jordan reported getting their foot caught at the bottom of the particular down escalator which is the subject of this suit. (*Id.*)

Schindler argues that although McEachern believes that the worn step treads are evidence of improper maintenance on the escalators, the wear on the step treads was within the code for ASME. (*Id.*, Exhs. 1, p. 33 and 6.) McEachern testified that he did not know the condition of the step treads on January 14, 2001, and does not know when the step treads became worn. (*Id.*, Exh., 1, pp. 70, 72.) McEachern stated that he does not know if the wear was within ASME standards because he does not know what the allowable wear limits are for step treads. (*Id.*, p. 39.)

Schindler further asserts that even in McEachern knew what the ASME limits were for step treads, he cannot render an opinion about whether the wear on the step treads was within those limits because he did not measure the step treads on either of his two inspections of the

5

escalator. (*Id.*) He did not measure the tread because he did not bring his measuring instruments to the inspection, because he did not expect the wear on the step tread to be an issue. (*Id.*, pp. 39, 54.) Schindler asserts that the width of the step treads determines whether there is proper clearance when the step treads penetrate the teeth of the combplate. (Summ. J. Mot., p. 7.) When the treads are too worn, there could be excessive clearance between the treads and the combplate. (*Id.*)

Schindler asserts that the Isle did not report any problems with the down escalator to Schindler at any time prior to or after January 14, 2001. (*Id.*, Exh. 6.) Furthermore, the incident involving the Plaintiff was not reported to Schindler by the Isle. (*Id.*, Exh. 7.) Schindler argues that it complied with the terms of the preventative maintenance agreement, which sets out Schindler's responsibilities for performing maintenance on the escalators at the Isle. (*Id.*, Exh. 6.) Schindler asserts that McEachern produced no evidence that Schindler did not comply with the contract terms between it and the Isle regarding the escalators. (Summ. J. Mot., p. 9.) McEachern had a copy of that contract but did not read it. (*Id.*, Exh. 1, p. 80.) Accordingly, Schindler argues that McEachern is unable to give an opinion regarding whether Schindler complied with the contract terms. (*Id.*) Finally Schindler maintains that McEachern's report contains no opinions to support the allegations that Schindler negligently designed, manufactured and installed the escalator. (*Id.*, p. 9; Exh. 5.)

According to the Plaintiff, she has established that maintenance and inspection for the subject escalator must be in accordance with ASME code section A17.1, based on McEachern's affidavit. (Pl.'s Resp., p. 4; Exh. 1.) McEachern has been a member of the American Society of Mechanical Engineers for over 25 years, and has personally inspected the escalator which is the

6

subject of this lawsuit in November and December of 2004. (*Id.*, Exh. 1; Summ. J. Mot., Exh. 1, p. 85.) McEachern states that he inspected the escalator combplate, stair treads, and Jordan's shoes and concluded that the shoes were damaged by the escalator causing her injuries. (Pl.'s Resp., p. 4; Exh. 1.) He specifically avers that the stair tread shows excessive wear at the point it enters the fingers of the combplate and caused Jordan's shoes to be trapped in the fingers of the combplate. (*Id.*) McEachern contends that the records provided by Schindler contain no documentation of dates or times of the inspections, serial numbers of units inspected, or any record of preventative maintenance performed on the escalators. (*Id.*)

The Plaintiff argues that there is a material question of fact about whether Whittle's training was adequate to perform the inspections and maintenance of the escalator in accordance with the applicable standards. (Pl.'s Resp., p. 6.) In addition, the Plaintiff contends that when the escalator was photographed on October 28, 2004, there was a broken combplate tooth at the exact area in which Jordan claims to have had her shoe trapped. (*Id.*; Exh. 8.) The Plaintiff contends that there is a question whether there was damage to the combplate at the time of the accident, and whether proper inspections and maintenance were performed in accordance with the contract specifications which led to Jordan's injuries. (*Id.*)

According to the Defendant, there is no basis for McEachern's conclusion that Jordan's work boots were damaged by the escalator. (Def.'s Reb., p. 2.) McEachern believes that because there was a missing tooth in the combplate on October 26, 2004, that the tooth was missing in that spot on January 14, 2001, according to the Defendant. (*Id.*) Jordan offered no evidence that the combplate was damaged on the date of her injury. (*Id.*) On the other hand, Schindler argues that its maintenance records from July 25, 2000, to July 13, 2001, reflect that inspections and

7

routine maintenance performed during that time period do not reflect a damaged combplate, and would not record parts of the escalator that were performing normally during that time. (*Id.*)

As for McEachern's arguments regarding ASME A17.1, Schindler argues that McEachern's arguments support Schindler's position that McEachern is not qualified as an escalator expert in this case. (*Id.*, pp. 2-3.) Schindler contends that McEachern's concerns about the applicability of ASME A17.1, Section 8.11.4 is misplaced. (*Id.*, p. 2.) ASME 8.11 provides for inspections "made by an inspector employed by the authority having jurisdiction or by a person authorized by the authority having jurisdiction." (*Id.*, Exh. 1, ASME Section 8.11.1.1.1.) That inspector, according to Schindler, is a QEI-1 (Qualified Elevator Inspector) which would be a state or city inspector, hired by the escalator owner to evaluate work performed by the maintenance company. (*Id.*, p. 3.) These types of inspections are not relevant to preventative maintenance and repairs performed by Schindler's mechanics, according to the Defendant. (*Id.*) The checklist used by a QEI-1 inspector is not used by escalator maintenance companies. (*Id.*, Exh. 2.) Neither the State of Mississippi nor any local government agency in Mississippi requires periodic inspections of escalator equipment by a QEI-1 inspector. (*Id.*)

## Standard of Review

Summary judgment is granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment must show the absence of evidence in the nonmoving party's case. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the nonmoving party then must demonstrate with specific facts that a genuine issue of material fact

8

exists. *Goodwin v. Johnson*, 132 F.3d 162, 169 (5th Cir. 1997). The plaintiff must substantiate their case with more than speculative evidence, allegations and conclusions to avoid summary judgment. *Celotex*, 477 U.S. 321-2; *see also Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 383 (5th Cir. 2000), *cert. denied*, 531 U.S. 1073 (2001). All facts and all reasonable inferences are considered in the light most favorable to the nonmoving party. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). In making this assessment, the court will not weigh the evidence or evaluate the credibility of witnesses. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Applying these standards to the evidence presented by the parties to the present motions, the Court makes the following findings.

## Legal Analysis

Jordan asserted claims for negligence, failure to warn, and for failure to design, manufacture and/or install the escalator steps in a safe condition against Schindler. (Ct. R., Doc. 1, Compl.) Under Mississippi product liability law,

> (a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
> (i) 2. The product was defective because it failed to contain adequate warnings or instructions,
> (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
> (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.
> (c) (i) In any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(I)2 of this section, the manufacturer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.

9

*Hobson v. Waggoner Eng'g, Inc.*, 878 So.2d 68, 78 (Miss. App. 2003) (quoting MISS. CODE. ANN. 11-1-63.) Plaintiffs alleging a design defect must show by a preponderance of the evidence that at the time the product left control of the manufacturer the following elements were present:

> (i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and
> (ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

MISS. CODE ANN. § 11-1-63(f).

The plaintiff has the burden of showing that the "defect that allegedly was the proximate cause of their injury existed at the time that the product left the hands of the manufacturer, and that the defect rendered the product unreasonably dangerous. Accordingly, the proof must support that no material change in that product occurred after leaving the manufacturer's control." *Clark v. Brass Eagle, Inc.*, 866 So.2d 456, 461 (Miss. 2004). Here, Jordan offered no proof that a design defect existed in the escalator, and her expert offered no feasible design alternative to the escalator at issue in this suit.

To rely on an inadequate warning to establish the existence of a defect, Jordan must prove that the manufacturer or seller knew or in the light of reasonably available knowledge should have known about the danger; and that the ordinary user or consumer would not realize its dangerous condition. MISS. CODE. ANN. § 11-1-63(c)(i). "An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would

10

have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product . . . . MISS. CODE ANN. § 11-1-63(c)(ii). Jordan presented no evidence that she read or relied on any Schindler advertisement, brochure, package or label relative to the operation of the escalator. *See 3M Co. v. Johnson*, 895 So.2d 151, 166 (Miss. 2005). In addition, a key element of causation for a failure-to-warn claim is proof of a causal link between the plaintiff's injuries and the product's allegedly lacking a warning or having an inadequate warning. In other words, the failure to warn must be the proximate cause of the injuries suffered or it is irrelevant. *See Garner v. Santoro*, 865 F.2d 629, 641, 642 (5th Cir. 1989). There is no such proof in this case. The Court finds, accordingly, Jordan failed to demonstrate that some other warning would have given additional information that she did not already know, and and that she would have acted upon that new information so as to avoid her injuries. Jordan offered no expert testimony relating to manufacturing defects, design defects, or warning or instruction defects, which precludes recovery on those allegations. *Hammond v. Coleman Co., Inc.* 61 F. Supp.2d 533, 541 (S.D. Miss. 1999), *aff'd* 209 F.2d 718. The Court concludes that Jordan has not demonstrated that any "missing" warning caused her injuries, and further finds that the Defendant's motion for summary judgment on this claim and any claim of a design defect should be granted.

A plaintiff advancing a negligence claim against a defendant in Mississippi must show by a preponderance of the evidence that the defendant had a duty, breached that duty, causing the plaintiff to suffer damages, and a causal connection between those damages and the breach of duty such that the breach is the proximate cause of the damages to establish a cause of action for

negligence. *Gulledge v. Shaw*, 880 So.2d 288, 292-3 (Miss. 2004). Under her negligence claim, Jordan must establish by competent evidence that Schindler was negligent in its maintenance of the escalator, which she has failed to do. *Rudd v. Montgomery Elevator Co.*, 618 So.2d 68, 72 (Miss. 1993). She cannot establish that there was a problem with the escalator in 2001 by attempting to show there was a problem with the escalator in 2004. The Court, therefore, concludes that the Defendant's motion for summary judgment on Jordan's negligence claim should be granted. This finding renders Plaintiff's motion in opposition to the Defendant's motion moot, and the Court finds that the motion should be denied.

## Conclusion

For the reasons given above, this Court finds that the Defendant's motion for summary judgment [39-1] should be granted. The Court further finds that the Plaintiff's motion in opposition [42-1] to the summary judgment motion should be denied. A separate Final Judgment in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue this date.

THIS the 16th day of June, 2005.

/s/ **_Walter J. Gex III_**
UNITED STATES SENIOR DISTRICT JUDGE